In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1162

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

REX A. HOPPER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 4:17-cr-40034-JPG-1 — **J. Phil Gilbert**, *Judge.*

ARGUED FEBRUARY 12, 2021 — DECIDED AUGUST 25, 2021

Before RIPPLE, HAMILTON, and ST. EVE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* In February 2018, Rex A. Hopper was convicted of conspiracy to distribute fifty or more grams of a mixture containing methamphetamine, in violation of 21 U.S.C. §§ 841(a), 846, and 841(b)(1)(B). The district court initially sentenced Mr. Hopper to 235 months' imprisonment. On the previous appeal, we concluded that the district court had committed plain error in the calculation of the drug quantity for which Mr. Hopper was responsible and re-

manded the case to the district court. *See United States v. Hopper* (*Hopper I*), 934 F.3d 740 (7th Cir. 2019).

The district court ordered a revised presentence report. That report reduced to 1.17 kilograms the amount of "ice" methamphetamine for which Mr. Hopper was responsible. The new presentence report also assessed an additional criminal history point for a state burglary conviction; the plea for that crime was entered after the original federal sentence had been imposed but before our remand. After reviewing the revised presentence report, Mr. Hopper submitted a pro se objection to its relevant-conduct assessment. Specifically, he submitted that a jury, not the court, should have made the determination that the drugs at issue qualified as "ice" for purposes of the Sentencing Guidelines. Notably, Mr. Hopper did not object to the additional criminal history point for the state burglary conviction.

The district court rejected Mr. Hopper's pro se challenge to his relevant conduct. The court concluded that the issue of drug type, as opposed to drug quantity, already had been decided in the first appeal and was not within the scope of our remand. The court therefore declined to revisit the matter. The district court then proceeded to craft a sentence that, in accord with our opinion, held Mr. Hopper responsible for 1.17 kilograms of "ice" methamphetamine and that also took into account his new state conviction for burglary. The district court reimposed a sentence of 235 months' imprisonment.

Mr. Hopper now maintains that the district court committed plain error in both the determination of the drug type and in the assessment of the additional criminal history point for the state burglary conviction. We conclude that the

district court correctly determined that our earlier remand order did not permit it to reconsider Mr. Hopper's argument about the drug type and therefore properly rejected Mr. Hopper's pro se objection. We further hold that the district court did not commit plain error in assessing Mr. Hopper an additional criminal history point for his state burglary conviction. We therefore affirm the judgment of the district court.

# I

## BACKGROUND

### A. Conviction and Initial Sentencing

In June 2017, a grand jury indicted Mr. Hopper on one count of conspiracy to distribute fifty grams or more of a mixture and substance containing methamphetamine. During a three-day trial, members of the conspiracy as well as law enforcement officers testified.[1] Although most of the sellers and users testified that what they purchased from Mr. Hopper was "ice," some referred to it more generically as methamphetamine. Two samples, seized from Mr. Hopper's residence and weighing a total of 3.942 grams, were tested at a Drug Enforcement Agency crime lab; one sample had a purity level of 98% methamphetamine and the other 97%. Based on the evidence at trial, a jury convicted Mr. Hopper and "unanimously agree[d], by proof beyond a reasonable doubt, that the defendant conspired to distribute

---

[1] The district court had jurisdiction pursuant to 18 U.S.C. § 3231. Our jurisdiction is secure under 28 U.S.C. § 1291.

more than fifty (50) grams of a mixture and substance containing methamphetamine[.]"[2]

At sentencing, the district court determined that Mr. Hopper was responsible for 1.968 kilograms of "ice" methamphetamine which corresponded to a base offense level of 36 under U.S.S.G. § 2D1.2(c)(2). The court also imposed a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance under U.S.S.G. § 2D1.1(b)(12). As for Mr. Hopper's criminal history, the district court assessed one criminal history point for a 2008 aggravated battery conviction, which resulted in a criminal history category of I. Together with Mr. Hopper's offense level, this determination yielded an advisory guidelines range of 235 to 293 months. The district court imposed a sentence of 235 months. Mr. Hopper appealed.

**B. First Appeal**

In his initial appeal, Mr. Hopper challenged both his conviction and his sentence. Regarding his sentence, Mr. Hopper maintained that the district court improperly had applied the enhancement for maintaining a drug premises. He also asserted that the district court had engaged in improper double counting because it attributed to him drug amounts from transactions described by both Lucas Holland and Randall Riley. These two individuals, however, were describing the same transaction.

---

[2] R.68 at 2.

We rejected Mr. Hopper's challenges to his conviction and to the enhancement for maintaining a drug premises. With respect to the drug calculation, however, we concluded that the record clearly showed that the transactions described by Holland and Riley were the same and that the presentence report should not have counted those amounts twice in determining the quantity of drugs attributable to Mr. Hopper. We also determined that attributing to Mr. Hopper double the amount of drugs actually involved in the transactions "affected Mr. Hopper's substantial rights because it increased his base offense level and his corresponding guidelines imprisonment range." *Hopper I*, 934 F.3d at 768. The Government had contended that "any error in calculating Mr. Hopper's relevant conduct was harmless" because the district court could have relied on other transactions in which Mr. Hopper was involved. *Id.* at 769. Nevertheless, we declined

> to affirm Mr. Hopper's sentence based on relevant conduct calculations that the Government presented for the first time on appeal. Because neither party challenged the relevant conduct calculations below, "the district court, which has sentencing responsibility," had no opportunity to consider any arguments regarding the proper calculation of Mr. Hopper's relevant conduct. The parties must present their drug quantity calculations to the district court to consider in the first instance on remand.

*Id.* at 769–70 (citation omitted).

We therefore affirmed "Mr. Hopper's conviction for conspiracy to distribute methamphetamine and affirm[ed] the

district court's determination that he was subject to a sentence enhancement for maintaining a residence for the purpose of distributing methamphetamine." *Id.* However, we "vacate[d] his sentence and remand[ed] his case to the district court for resentencing based on our conclusion that there was plain error in the calculation of Mr. Hopper's relevant conduct." *Id.*

## C. Proceedings on Remand

When the case returned to the district court, the probation office prepared a revised presentence report. This report removed the double-counted drug amounts and determined that the total relevant conduct was 1.17 kilograms of "ice,"[3] which yielded a base offense level of 34. As for Mr. Hopper's criminal history, the revised report noted additional pending charges for Mr. Hopper, but no resulting change in criminal history points. The resulting guidelines range was 188 to 235 months.

The following month, the probation office issued another revised presentence report.[4] This version noted that, during the pendency of his first appeal, a state residential burglary charge from 2017 previously listed as "pending," had resulted in a conviction and sentence. The report also indicated that this residential burglary sentence, designated by the state sentencing court to be served concurrently with his federal sentence, had been stayed. The state court had set a status conference on the matter for September 6, 2018, but no

---

[3] R.130 at 6 (¶22).

[4] *See* R.133.

hearing had occurred, and no further details were available. The presentence report therefore assessed one additional history point for this conviction.[5] The additional history point resulted in a criminal history category of II, and Mr. Hopper's resulting guideline range was 210 to 262 months.

At the sentencing hearing held on October 31, 2019, the parties and the court discussed the increase in the number of criminal history points. The Government explained that,

> [a]t the initial sentencing of Mr. Hopper he had not pled guilty to this offense yet, so he did not receive a criminal history point for it. … This change of plea occurred two days after the initial sentencing, so now he has two criminal his-

---

[5] The presentence report indicated that the basis for the assessment of one criminal history point was U.S.S.G. § 4A1.2(a)(4) and 4A1.2(b)(2). Section 4A1.2(a)(4) provides:

> Where a defendant has been convicted of an offense, but not yet sentenced, such conviction shall be counted as if it constituted a prior sentence under § 4A1.1(c) if a sentence resulting from that conviction otherwise would be countable. In the case of a conviction for an offense set forth in § 4A1.2(c)(1), apply this provision only where the sentence for such offense would be countable regardless of type or length.

> "Convicted of an offense," for purposes of this provision, means that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere.

Section 4A1.2(b)(2) provides: "If part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended."

> tory points, which would make him a Criminal
> History Category II, and his advisory guideline
> range is now 210 to 262 months.[6]

After the Government indicated that this matter was "the only change," the court turned to defense counsel and inquired, "Is that your understanding … ?"[7] Defense counsel responded: "Yes, it is Your Honor. … I did look into the validity of it. We don't have objection to the new presentence report. I think it accurately sets forth the guidelines."[8]

The district court then inquired whether Mr. Hopper had had an opportunity to review the revised report with counsel and offered Mr. Hopper a continuance if he needed more time. Mr. Hopper declined the offer, and, when the court asked him whether there were "any errors, corrections, alterations, or additions to the report which [he] wish[ed] to make," Mr. Hopper responded, "No, sir."[9] The court then asked defense counsel if "the Defendant ha[d] any objections … that would affect the advisory guidelines range." Defense counsel responded, "No, we do not, Your Honor."[10]

Minutes later, however, defense counsel asked for a moment to consult with Mr. Hopper. He then stated:

---

[6] R.153 at 3–4.

[7] *Id*. at 4.

[8] *Id.*

[9] *Id*. at 5.

[10] *Id*. at 6.

> [T]his is … where we stand: There were some objections that I think Mr. Hopper had talked to me about earlier when we originally met. They're based on what would be kind of *Apprendi* or *Alleyne* challenges to the guidelines. I've provided some materials and explanation about why I don't think there's a good faith basis for those objections. I indicated to Mr. Hopper that I wouldn't be filing them, but I would bring it to the Court's attention if he wanted to proceed *pro se* or if he wanted different counsel, but that I don't have a basis for filing those.[11]

In response to further questioning by the court, Mr. Hopper indicated that he had objections "[a]bout the weight and purity."[12] Specifically, he thought the weight and purity "should have been put to the jury."[13] Defense counsel reiterated that he did not believe there was "a good faith basis [on which] to advance that objection."[14]

The court questioned Mr. Hopper to ascertain the crux of his argument and tried to explain that the resulting guidelines range fell within the statutory limits. The court also offered to appoint another attorney for Mr. Hopper. Mr. Hop-

---

[11] *Id.* at 7.

[12] *Id.* at 8.

[13] *Id.*

[14] *Id.* at 9.

per stated that he wanted to keep his attorney, but he simply wanted his objections documented on the record. The court then decided that the best course was to reset the sentencing.

At that point, the court raised the issue of the state residential burglary conviction. It noted that the sentence for that conviction had been suspended but, depending on what transpired before the new hearing date, Mr. Hopper "could be bumped from a Criminal History Category II to a III."[15] All acknowledged that possibility and agreed that objections to any further revisions to the presentence report should be in writing.

At the continued hearing on November 21, 2019, defense counsel indicated that he and Mr. Hopper were in the same place as they had been previously: Mr. Hopper wanted to assert pro se objections to the presentence report that counsel could not in good faith make. The court therefore allowed Mr. Hopper to file his pro se objections with the understanding that the probation office and the Government would have an opportunity to respond. The state burglary proceedings also were discussed, and Mr. Hopper acknowledged that, if the stay were lifted in those proceedings, a postponement of his federal sentencing could affect his criminal history points and his criminal history category. The sentencing hearing was then postponed a second time.

Mr. Hopper filed his pro se objections that same day. In those objections, he stated:

---

[15] *Id.* at 16.

I object to the weight (500-1.17kg),

I object to the purity (ICE) &

I object to the 2 point enhancement for maintaining a premises for the purpose of drug distribution based on solely Judge-found-facts. This is a violation of my "Sixth Amendment Right."

On 3/1/2018 the jury found me (Rex Hopper) guilty of the conspiracy charged in Count 1 of the Super[s]eding Indictment. Pursuant to a special verdict form, the Jury found me (Rex A. Hopper) Guilty by proof beyond [a] reasonable doubt of conspiracy to distribute more than fifty (50) grams of a mixture and substance containing methamphetamine, that[']s what my Sentencing Guidelines should have reflected. …

I object to the fact that the Grand Jury indicted me on a Schedule II substance "methamphetamine," but in my Presentence Investigation Report[,] the court based on solely judge-found-facts, sentenced me to a Schedule III substance "ICE," this is a violation of my rights![16]

The Government filed a response to Mr. Hopper's objections. It first noted that "any argument raised by the defendant *pro se* other than the drug quantity involved is beyond

---

[16] R.136 at 1–2 (capitalization removed).

the scope of the remand in this case."[17] It further argued that any argument that could have been raised in the initial appeal, but was not, had been waived. The Government also addressed all possible interpretations of Mr. Hopper's objections on the merits.[18]

At the continued sentencing hearing on January 28, 2020, the court first recounted Mr. Hopper's pro se objections:

> the first objection you objected to the relevant conduct, and the second objection has to do with the guidelines being –relevant conduct being pursuant to the classification of ice methamphetamine versus mixture and substance, and your third objection objected to two-point enhancement for maintaining a premise for the purpose of distribution solely based on Judge-found facts.[19]

Mr. Hopper confirmed that those were his objections. The court also gave Mr. Hopper an opportunity to argue his objections. Mr. Hopper stated:

> It's just I went to jury trial, the jury found me guilty of 50 grams or more of a mixture and substance of methamphetamine, and I was sentenced. That's a Class II substance. I was sentenced to a Class III substance, ice, which is

---

[17] R.139 at 1.

[18] *See id.* at 2–5.

[19] R.155 at 3.

> based solely on Judge-found facts, and that's a
> violation of my rights, I feel.[20]

Mr. Hopper believed the same rationale applied to the weight of drugs attributed to him. The Government was given an opportunity to respond and reiterated its belief that

> any argument other than the quantity is out-
> side the scope of the remand in this case. The
> Seventh Circuit was clear that there was not an
> issue of whether the substance was ice or not
> … . The only issue was the quantity, and the
> Seventh Circuit believed that some of the
> quantity was double-counted.[21]

Beyond that, the Government stated that, even if the court could consider it, Mr. Hopper's objection did not raise *Apprendi* concerns because his guideline range was below the statutory maximum.

The court then disposed of the objections:

> [T]he Seventh Circuit found that this Court
> plainly erred when it calculated Mr. Hopper's
> relevant conduct and corresponding guideline
> range. The Seventh Circuit found that in sepa-
> rate interviews between Lucas Holland and
> Randall Riley that they were describing the
> same transactions, and by including both
> amounts this Court was double-counting those

---

[20] *Id*. at 4.

[21] *Id*. at 6.

quantities. So, the Court of Appeals vacated Mr. Hopper's sentence and remanded this case back to this Court for resentencing. Although this case is back for a full resentencing, the Court of Appeals affirmed the original findings of this Court, including the specific offense characteristics of the Defendant, the Defendant maintaining a residence for the purpose of manufacturing or distributing a controlled substance, as well as the relevant conduct involved in the case being ice methamphetamine.

The Seventh Circuit has stated in previous … opinions … that if they remand to correct a … discrete particular error that can be corrected without a redetermination of other issues, the District Court is limited to correcting that error, and the law of the case doctrine generally prohibits the District Court from reconsidering on remand the issues expressly or impliedly decided by the higher Court. So, Mr. Norwood's argument as to the limitation of this Court on remand is correct.

The issue as to whether the nature of the substance being ice methamphetamine, as well as the two-point enhancement under 2D1.1(b)(12) of the guidelines has previously been expressly or impliedly decided by the Court of Appeals.[22]

---

22 *Id.* at 7–8.

The district court went on to find that Mr. Hopper was responsible for 1.17 kilograms of "ice" methamphetamine. With the two-level enhancement for maintaining a drug premises, this yielded an adjusted offense level of 36. Combined with his criminal history category of II, the resulting guideline range was 210 to 262 months. Before going any further, the court asked counsel to confirm that "the guideline calculations [were] correct"; defense counsel noted no objections "apart from those that were leveled by Mr. Hopper himself."[23] The court then heard argument from counsel and again settled on a sentence of 235 months.[24]

Mr. Hopper again appealed his sentence.

## II

## DISCUSSION

## A.

Mr. Hopper first contends that the Government failed to meet its burden of establishing that the conspiracy for which Mr. Hopper was convicted involved the distribution of "ice" methamphetamine. He maintains that our recent decision, *United States v. Carnell*, 972 F.3d 932, 945 (7th Cir. 2020), makes clear that the Government failed to meet its burden of establishing that the drugs at issue were "at least 80% pure methamphetamine" because its proof consisted predominantly of "circumstantial evidence by users, dealers and law

---

[23] *Id.* at 9–10.

[24] *See id.* at 23.

enforcement that [the] drug appears to be ice based on look, smell, effect, [and] nomenclature."

Mr. Hopper acknowledges that we can consider this issue only if it falls within the scope of our remand in *Hopper I*. He maintains that his current argument meets this criterion because our remand concerned the calculation of drug quantity as it relates to relevant conduct. According to Mr. Hopper, "[a]n objection as to the purity … of methamphetamine" falls within these parameters.[25]

We cannot accept this view. "As a general matter, we have distinguished three types of remand." *United States v. Uriarte*, 975 F.3d 596, 600 n.2 (7th Cir. 2020) (en banc). In the first type—not at issue here—"the appellate court seeks a ruling or advice from the trial court and[,] pending its receipt of that ruling or advice[,] retains jurisdiction over the appeal." *Id*. (alteration in original) (quoting *United States v. Simms*, 721 F.3d 850, 852 (7th Cir. 2013)). In the second type, "the appellate court returns the case to the trial court but with instructions to make a ruling or other determination on a specific issue or issues and do nothing else." *Id*. (emphasis removed) (quoting *Simms*, 721 F.3d at 852). Finally, in the third type, "the general remand," "the appellate court returns the case to the trial court for further proceedings consistent with the appellate court's decision, but consistency with that decision is the only limitation imposed by the appellate court." *Id*. (quoting *Simms*, 721 F.3d at 852).

---

[25] Appellant's Br. 22.

It is our "decision to remand and our corresponding opinion" that determine the scope of that remand. *United States v. Barnes*, 660 F.3d 1000, 1006 (7th Cir. 2011). When we employ "broad" language, such as "we vacate the sentence[] … on count 8 and remand for resentencing consistent with this opinion," a complete resentencing is required. *Uriarte*, 975 F.3d at 600 n.2 (capitalization removed) (alteration in original) (quoting *United States v. Cardena*, 842 F.3d 959, 1002 (7th Cir. 2016)). By contrast, when our remand language is limited to a specific issue, the parties generally are constrained to that issue on remand. *United States v. Adams*, 746 F.3d 734, 744–45 (7th Cir. 2014) (issuing limited remand for correction of offense level and redetermination of appropriate sentence in light of that correction).

Here, both our decision to remand and the remand language we employed in *Hopper I* focused on the *calculation* of the amount of drugs attributable to Mr. Hopper. Although Mr. Hopper raised another challenge to his sentence, namely his maintenance of drug premises, the only sentencing error we identified was the double counting of the Holland and Riley transactions. We therefore concluded that "resentencing based on *recalculation* of Mr. Hopper's relevant conduct [wa]s required." *Hopper I*, 934 F.3d at 769 (emphasis added). We reiterated the focus of the remand later in our opinion, in response to the Government's suggestion that we could affirm based on other transactions on which the district court had not explicitly relied. We explained that "the district court, which has sentencing responsibility, had no opportunity to consider any arguments regarding the proper calculation of Mr. Hopper's relevant conduct. The parties must present *their drug quantity calculations* to the district court to consider in the first instance on remand." *Id.* at 770 (empha-

sis added) (internal quotation marks omitted) (internal citation omitted). Finally, in the conclusion of *Hopper I*, we "remand[ed] [Mr. Hopper's] case to the district court for resentencing based on our conclusion that there was plain error *in the calculation of Mr. Hopper's relevant conduct*." *Id.* (emphasis added).

Our remand in *Hopper I* was limited to correcting the district court's calculation of drug quantity. We therefore cannot accept Mr. Hopper's argument that our opinion allowed for a broader inquiry into "relevant conduct." "In assessing the scope of our initial remand, an issue that could have been raised on appeal[,] but was not[,] is waived and, therefore, not remanded." *United States v. Whitlow*, 740 F.3d 433, 438 (7th Cir. 2014); *see also United States v. Dearborn*, 873 F.3d 570, 573 (7th Cir. 2017) (quoting same). Consequently, the district court did not err in rejecting Mr. Hopper's argument about the purity of the "ice" methamphetamine as outside the scope of our remand.

**B**.

Mr. Hopper also maintains that, in crafting his sentence on remand, the district court erred when it included his 2018 conviction for burglary as part of his criminal history calculation. The state court entered this conviction after the district court had imposed his sentence the first time. He concedes that he failed to raise this issue before the district court and that, consequently, our review is only for plain error. Under the plain error standard, Mr. Hopper must establish that "(1) there was error, (2) it was plain, (3) it affected his substantial rights and (4) the court should exercise its discretion to correct the error because it seriously affected the fairness, integrity or public reputation of the judicial proceed-

ings." *United States v. Jumah*, 599 F.3d 799, 811 (7th Cir. 2010) (citing *United States v. Olano*, 507 U.S. 725, 732–35 (1993)). In order for error to be "plain," it "must be clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

The district court assessed one criminal history point for a burglary conviction dated July 19, 2018,[26] two days after the district court originally imposed sentence on his federal distribution conviction. As we noted earlier, the state court imposed a seven-year sentence for the state burglary conviction and ordered that it be served concurrently with his federal sentence. Later, on August 9, 2018, state court suspended the sentence and set a status hearing on the stay of this sentence for September 2018, but that hearing did not take place.

In preparing its report for the district court during the remand proceedings, the probation office, in calculating Mr. Hopper's criminal history category, accounted for this new state sentence by referring to U.S.S.G. §§ 4A1.1 and 4A1.2. Specifically, § 4A1.1 provides the number of criminal history points to assess for each "prior sentence of imprisonment," which § 4A1.2(a)(1) defines as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." Generally, points are assessed according to length of sentence:

---

[26] *See* R.133 at 11 (¶48).

(a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.

(b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).

(c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.

U.S.S.G. § 4A1.1. Sentences that are "totally suspended or stayed [are] counted as a prior sentence under § 4A1.1(c)." U.S.S.G. § 4A1.2(a)(3). If only "part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended." U.S.S.G § 4A1.2(b)(2).

Applying these provisions, the probation office determined that the state burglary sentence yielded an assessment of one criminal history point. Specifically, the seven-year sentence for his burglary conviction was unrelated to his federal offense and was imposed prior to his resentencing. Absent other circumstances, such a conviction would warrant an assessment of three points under § 4A1.2(a)(1). However, because the state court had suspended the sentence three weeks after it was imposed, a further reduction was warranted.[27]

---

[27] Whether the probation office treated the suspension by the state court as a complete suspension under § 4A1.2(a)(3) or a partial suspension under § 4A1.2(b)(2), the number of criminal history points attributable to this sentence decreased from three to one in accordance with § 4A1.1(c).

Mr. Hopper does not contest this numerical calculation; he agrees that, if his burglary sentence can be considered, the district court accurately assessed him one criminal history point. Instead, Mr. Hopper maintains that the district court erred in assessing him any criminal history points because "prior sentence" does not mean "any sentence" that was imposed before the resentencing; instead, it means "any sentence" that was imposed before his *original* sentence.

Mr. Hopper rests his contention on the decision of the First Circuit in *United States v. Ticchiarelli*, 171 F.3d 24, 35 (1st Cir. 1999). In *Ticchiarelli*, the First Circuit concluded that "the most sensible reading" of "prior sentence" was "a sentence which is prior to the original sentence which was vacated and remanded only for resentencing." *Id.* at 35. According to the First Circuit, this reading was most consistent with its conception of "the mandate rule," which "does not permit de novo resentencing as to all aspects of a sentence when a sentence has been vacated." *Id.*

Mr. Hopper acknowledges, however, that a majority of our sister circuits have reached the opposite view. *See United States v. Burke*, 863 F.3d 1355, 1359 (11th Cir. 2017) ("Unlike the effect of vacatur in the First Circuit, … vacatur in our Circuit wipes the slate clean. And that clean slate requires a district court to consider pre-vacatur sentences because a district court conducts a resentencing as if no initial sentencing ever occurred." (citation omitted)); *United States v. Tidwell*, 827 F.3d 761, 763 (8th Cir. 2016) ("We decline to apply this reasoning because the 'context' in this case is distinguishable. Tidwell was not resentenced on remand from this court. Rather, the district court granted him a *de novo* resentencing as postconviction relief under 28 U.S.C. § 2255. The

First Circuit's reasoning was based in part on its restrictive 'mandate rule.' We take a less restrictive approach in construing the scope of our mandate when we remand for resentencing." (citation omitted)); *United States v. Klump*, 57 F.3d 801, 802–03 (9th Cir. 1995) (concluding that a sentence imposed after the first federal sentence but before resentencing did not violate its rule against considering post-sentencing conduct because the conduct which formed the basis for the intervening sentence pre-dated the initial sentencing).

At this point, we can draw several conclusions. Initially, because our court has not yet had the occasion to address the interpretative issue addressed by the other circuits, it is difficult for Mr. Hopper to assert successfully that the district court committed plain error. An error is plain if it is "clear or obvious"[28] at the time of appeal.[29] To be clear or obvious, "[i]t cannot be subtle, arcane, debatable, or factually complicated," *United States v. Caputo*, 978 F.2d 972, 975 (7th Cir. 1992), but must be "contrary to well-settled law," *United States v. Salas*, 889 F.3d 681, 687 (10th Cir. 2018). *See United States v. Jones*, 873 F.3d 482, 497 (5th Cir. 2017) (explaining that the district court's error could not have been "plain" because there was a split in the circuits on which the Fifth Circuit had not taken a position). Given the lack of controlling

---

[28] *Puckett v. United States*, 556 U.S. 129, 135 (2009).

[29] *Henderson v. United States*, 568 U.S. 266, 271 (2013) (holding that whether error is plain is assessed according to the law "in effect at the time [the appellate court] renders its decision" (internal quotation marks omitted)).

precedent in our circuit, and the disagreement among the other courts of appeals, we cannot conclude that the district court's decision to consider Mr. Hopper's state burglary sentence a "prior sentence" for purposes of calculating his criminal history category was "plain" error. *See United States v. Koch*, 978 F.3d 719, 726 (10th Cir. 2020) ("In the absence of Supreme Court or circuit precedent directly addressing a particular issue, a circuit split on that issue weighs against a finding of plain error." (internal quotation marks omitted)).

Additionally, a forthright reading of our earlier decision in this case makes clear that, having determined that the initial sentence rested on a misapprehension of the quantity of drugs involved, we contemplated that the district court would have to examine any other aspect of the previous sentence infected by this error. We therefore "vacate[d] his sentence and remand[ed] his case to the district court for resentencing based on our conclusion that there was plain error in the calculation of Mr. Hopper's relevant conduct." *Hopper I*, 934 F.3d at 770.

Such a resentencing necessarily involves more than substituting the correct amount of drugs in the guideline calculation. A change in drug quantity certainly will affect the way the sentencing court views other factors that must be taken into account in the final sentencing determination. Indeed, in *Pepper v. United States*, 562 U.S. 476 (2011), the Supreme Court emphasized that "Congress could not have been clearer in directing that '[n]o limitation … be placed on the information concerning the background, character, and conduct' of a defendant that a district court may 'receive and consider for the purpose of imposing an appropriate sentence.'" *Id*. at 490 (alterations in original) (quoting 18 U.S.C.

§ 3661). The plain wording of this statutory command requires no judicial gloss. Furthermore, Congress has directed that the district courts consider specific factors in crafting an appropriate sentence. *See* 18 U.S.C. 3553(a). These mandatory considerations include the defendant's "history and characteristics" and the need to accomplish certain sentencing policy goals, such as protecting the public from further criminal conduct and affording "the defendant … needed educational or vocational training … or other correctional treatment." *Id.*

Consequently, in fashioning an individualized sentence, the district court certainly may consider intervening events that alter the assessment of factors made at the earlier sentencing. *See Pepper*, 562 U.S. at 491–92 (explaining how "evidence of postsentencing rehabilitation may be highly relevant to several … § 3553(a) factors" on resentencing). Proof of significant rehabilitation might inure to the defendant's benefit, *see id.* at 492; an intervening conviction will have an adverse effect, *cf. Wasman v. United States*, 468 U.S. 559, 572 (1984) (explaining that, "after retrial and conviction following a defendant's successful appeal, a sentencing authority may justify an increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings").[30] The statutory

---

[30] Again, we note that the need to reopen those aspects of the sentence that may have been affected by the error does not require the district court to reexamine factual matters that already were determined, or could have been determined, in earlier proceedings. Absent a showing of new developments that could not have been considered by the court in the previous proceeding, such matters are settled. *See supra* at pp.17–18.

scheme reflects the congressional realization that district courts sentence and resentence real persons in real time. It therefore places no barrier on the district court's consideration of developments that have occurred after the original sentencing that are relevant to the sentencing process.

Oftentimes, the new evidence is a factor favorable to the defendant such as significant rehabilitation efforts while incarcerated. Here, the new development was not favorable. What had been simply a "pending" charged burglary at the time of the Mr. Hopper's original sentencing had become a conviction and sentence. Although the state court had mitigated substantially the impact of the state sentence through a stay, the conviction nevertheless warranted consideration.

Here, the district court did not consider the evidence of Mr. Hopper's subsequent criminal activity to guide its choice of guideline sentence. Instead, Mr. Hopper's state burglary conviction was accounted for in the calculation of his criminal history category, specifically, the district court employed § 4A1.1 and § 4A1.2(a)(1). Our case therefore does not involve direct application of *Pepper*, § 3661, or § 3553(a).

However, *Pepper*, § 3661, and § 3553(a) do inform our understanding of what factors constitute legitimate considerations in sentencing. At bottom, Mr. Hopper's argument is that "*any sentence* previously imposed" in § 4A1.2(a)(1) cannot include sentences imposed after his original sentencing because district courts cannot consider evidence of intervening events. As we have demonstrated, this is not the case. Moreover, similar to the mandates of § 3661 and § 3553(a), the language of the Guideline is broad and inclusive. It directs courts, in the first instance, to include within the defendant's criminal history calculation *any* sentences im-

posed, including those imposed after a vacated original sentence.

Here, there was no plain error. Indeed, the district court acted consistently with the language of the Guidelines, with Congress's statutory requirements for sentencing, and with the Supreme Court's guidance. Therefore, we cannot conclude that the district court erred in assessing Mr. Hopper an additional criminal history point.

## CONCLUSION

For the reasons set forth in the foregoing opinion, the judgment of the district court is affirmed.

AFFIRMED