In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-2135

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SCOTT A. CARNELL,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 4:18-cr-40066 — **J. Phil Gilbert**, *Judge.*

ARGUED MARCH 30, 2022 — DECIDED JUNE 2, 2022

Before EASTERBROOK, WOOD, and HAMILTON, *Circuit Judges*.

WOOD, *Circuit Judge*. In 2019 Scott Carnell pleaded guilty to one count of conspiracy to distribute a mixture containing methamphetamine. At Carnell's sentencing hearing, however, the district court found that Carnell had conspired to distribute 2.37 kilograms of pure methamphetamine, a finding that increased Carnell's base offense level under the U.S. Sentencing Guidelines by four points. Carnell appealed, and we

reversed in part and remanded because the government had not met its burden to prove the greater level of purity. *United States v. Carnell*, 972 F.3d 932 (7th Cir. 2020) ("*Carnell I*"). On remand, the district court recalculated both Carnell's offense level and his criminal-history category. It increased the latter from category III to V to account for Carnell's convictions on two Illinois offenses while *Carnell I* was on appeal. The court also specified for the first time that Carnell's federal sentence would be consecutive to any state sentence resulting from several other charges that were pending at the time. Carnell appealed again, asserting that both the criminal-history recalculation and the consecutive-sentencing order exceeded the scope of the *Carnell I* remand. This time, we find no merit in Carnell's arguments, and so we affirm.

**I**

We begin with a few more details about our decision in *Carnell I* and subsequent events. Carnell's 2019 guilty plea was to one count of violating 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii), and 846. Together, those provisions make it a federal crime to conspire to distribute 50 grams or more of a mixture or substance containing methamphetamine. The probation office prepared a presentence investigation report (PSR), in which it concluded that Carnell's relevant conduct involved 2.37 kg of pure methamphetamine (also known as "ice"), not a mixture, and that this called for a base offense level of 36. (The federal sentencing guidelines distinguish between methamphetamine mixtures and ice, treating distribution of the latter more severely. See U.S.S.G. § 2D1.1, note C.) The PSR also calculated a criminal-history category of III and proposed a three-point acceptance-of-responsibility reduction to Carnell's total offense level.

At the sentencing hearing, Carnell objected to the PSR's classification of the drugs as ice. But the district court rejected his arguments, adopted the PSR's findings and recommendations, and calculated a guideline range of 168 to 210 months. It sentenced Carnell to 192 months' imprisonment.

Carnell appealed, arguing that the government had not carried its burden to prove drug purity. For present purposes, it suffices to say that we agreed with him. For more details, see *Carnell I*, 972 F.3d at 938–45. We reversed the district court's finding as to drug purity, vacated Carnell's sentence, and remanded "for further proceedings consistent with [the] opinion." *Id.* at 946. We did not discuss criminal history, other than to note in passing that the district court had considered it as part of its guideline calculation. *Id.* at 935. And, apart from the mandate just quoted, our opinion did not instruct the district court on its next steps.

On remand, the probation office prepared a revised PSR. That PSR added four points to Carnell's criminal history, all for Illinois charges that had been pending during the first sentencing proceeding but had resulted in convictions by the time we decided Carnell's first appeal. The revised PSR increased Carnell's criminal-history category from III to V, to account for the four additional points. Consistent with *Carnell I*, it used the guidelines for mixtures and downgraded Carnell's base offense level from 36 to 32 (meaning his total adjusted offense level was 29 after the acceptance-of-responsibility reduction). The PSR calculated a new guideline range of 140 to 175 months.

At the sentencing hearing on remand, the district court adopted the PSR's findings and calculations in full. When asked, neither Carnell nor his attorney voiced any objection

to the criminal-history recalculation. The court sentenced Carnell to 165 months (*i.e.*, 27 months less than the sentence it gave on the first go-round). It specified that the sentence was to be served consecutively to, among other things, "any sentence imposed in any pending felony charges in … St. Clair County, Illinois." At the time of resentencing, Carnell was facing charges of burglary and possession of a firearm by a felon in that county. Carnell did not object or otherwise take exception to the consecutive sentence at the hearing. He now argues, however, that the court erred both by increasing his criminal history to category V and by running this sentence consecutively to any sentence in the St. Clair matter.

## II

### A

We begin with Carnell's criminal-history argument. A remand for resentencing may be general or limited. 28 U.S.C. § 2106; *United States v. Mobley*, 833 F.3d 797, 801 (7th Cir. 2016). Carnell argues that the district court was not authorized to increase his history category from category III to category V because the *Carnell I* remand was limited and the history recalculation exceeded its scope. Normally, we review *de novo* whether a district court exceeded its mandate on remand. *United States v. White*, 406 F.3d 827, 831 (7th Cir. 2005). But when a defendant fails to raise an issue at sentencing, thereby forfeiting it, we instead assess only whether plain error exists. *United States v. Olano*, 507 U.S. 725, 733 (1993); *United States v. Hyatt*, 28 F.4th 776, 782 (7th Cir. 2022). The latter standard applies here, because Carnell did not object to the history recalculation in the district court.

The Supreme Court has explained that plain-error review involves four steps:

> First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, *i.e.,* affirmatively waived, by the appellant. … Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. … Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings. … Fourth and finally, if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Puckett v. United States*, 556 U.S. 129, 135 (2009) (cleaned up).

We recently addressed how the plain-error standard applies when a defendant's criminal-history category is recalculated on a limited remand. In *United States v. Hopper*, 934 F.3d 740 (7th Cir. 2019) ("*Hopper I*"), as here, a first appeal led us to vacate a defendant's sentence and remand for resentencing using a lower advisory offense level. As here, the district court on remand lowered the offense level but also increased the defendant's criminal-history category because of a new conviction. And as here, the defendant raised no objection to these changes in the district court, but then argued on appeal that the entire topic of criminal history was beyond the scope

of the first appeal's limited remand. See *United States v. Hopper*, 11 F.4th 561, 563, 570–71 (7th Cir. 2021) ("*Hopper II*").

Applying plain-error review, we concluded in *Hopper II* that the remand was limited, but we rejected the rest of the defendant's argument. We held that "in fashioning an individualized sentence" on remand, a court "may consider intervening events that alter the assessment of factors made at the earlier sentencing." *Id.* at 573. Because the "statutory scheme reflects the congressional realization that district courts sentence and resentence real persons in real time," it "places no barrier on the district court's consideration of developments that have occurred after the original sentencing that are relevant to the sentencing process." *Id.* We emphasized that such events may include not only "intervening conviction[s]" but also things like "[p]roof of significant rehabilitation." *Id.* In other words, reconsideration of criminal history on remand may redound to the benefit of a defendant, not just to her disadvantage. *Id.*

The sequence of events at issue in *Hopper II* resembles the one now before us in every relevant respect. Carnell nonetheless attempts to distinguish *Hopper II* on the ground that here, but not there, the first appeal directly addressed criminal history. He suggests that by "referencing a Guidelines range that included a criminal history category III, *Carnell* [*I*] conclusively decided that Mr. Carnell had a criminal history category III." The problem is that *Carnell I* did not mention "a criminal history category III." As we already have said, its only reference to criminal history was a passing allusion to "increases and decreases for criminal history and acceptance of responsibility" in its account of the first guideline range

calculation. 972 F.3d at 935. That is hardly enough to settle the issue.

Carnell also urges that *Hopper II* is fundamentally irreconcilable with other decisions of this court, chiefly *United States v. Husband*, 312 F.3d 247 (7th Cir. 2002). Carnell reads *Husband* to have held that the court's silence on an issue implies that the issue is not available for consideration upon remand. But *Husband* did not say that. It addressed two narrow situations: first, when an issue "could have been but was not raised on appeal"; and second, when an issue was "conclusively decided by this court on the first appeal." *Id.* at 251. Neither fits the facts here, where the issue of Carnell's new convictions arose for the first time on remand. *Husband* itself acknowledged that "[i]ssues that arise anew on remand are generally within the scope of the remand." *Id.* at 251 n.4. In light of *Hopper II,* we thus find no error (plain or otherwise) in the district court's recalculation of Carnell's criminal-history category.

B

We can be brief with Carnell's second point, which challenges the district court's decision to order that his federal sentence run consecutively to "any sentence imposed in any pending felony charges in … St. Clair County, Illinois." As we have explained, Carnell was facing two such charges at the time of his resentencing. Both those pending charges have now been dismissed. The government conceded at oral argument that if additional charges related to the same conduct are filed at a later date, those charges would be "new" charges, not "pending" charges of the sort contemplated by the district court's order. Accordingly, the consecutive-sentence issue is moot; no charge is presently "pending" against Carnell in St. Clair County and no future charge would

qualify as "pending." See *Qureshi v. Gonzales*, 442 F.3d 985, 988 (7th Cir. 2006) (discussing mootness).

Our holding on this point should be welcome news to Carnell. We cannot, of course, tell the Illinois courts what to do. If Carnell is convicted in St. Clair County down the road, it will be up to the state courts to decide whether to run any resulting sentence concurrently or consecutively to his federal sentence. But as far as the federal courts are concerned, the district court's order has run its course.

### III

The judgment of the district court is AFFIRMED.